## ISAM TOOKE ET AL. V. NOAH BONDS.

Where a party plead the failure of consideration of a promissory note, but did not aver that the plaintiff had no title to the land for which it was given, or that he had been evicted, an exception to the plea was properly sustained. (Paschal's Dig., Art. 227, Note 288.)

Where the defendant plead a tender, to make the plea good he must bring the money into court.

A plea that the plaintiff had agreed to take the principal in gold, and the interest in legal-tender treasury notes, and that the defendant had paid the principal in gold, does not raise the question of the constitutionality of the legal-tender treasury-note law; nor does it entitle the defendant to set-off the premium which the gold paid was worth over the treasury notes.

Upon the case made by the pleadings, the court declined to discuss the constitutionality of the legal-tender laws. (For authorities on these see Paschal's Dig., Notes 34, 41, 53, 61; Paschal's Anno. Const., Notes 83, 97, 98, 129.)

The general rule of computing payments upon a note is, that the payment shall first be applied to the interest already accrued, and the remainder to the extinction of so much of the principal; but if the creditor has agreed that the whole payment shall be applied to the principal, and so receipted it, and the payment is equal to the principal, the debt ceases to bear interest, and nothing remains due but the interest which had accrued at the time of the extinction of the principal. (Paschal's Dig., Art. 3940, Note 930.)

ERROR from Colorado. The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

This suit was brought by Bonds, defendant in error, against Tooke and Glenn, plaintiffs in error in the court below, on the 22d March, 1866, for the alleged balance due

on their promissory note, described in the statement of facts, and to enforce the vendor's lien on certain lands described in the petition.

The defendants, Tooke and Glenn, plead as follows to said suit: 1st. Payment in full of the note sued on. 2d. That the note sued on was given in part payment of the lands described in the petition, and that Melissa Bonds, wife of the plaintiff, set up a claim to said lands as her separate property, and threatened to bring suit for the same; that she asserted said claim with the knowledge and approbation of the plaintiff, and that the defendants had purchased said lands in entire ignorance of the claim of plaintiff's wife; they also prayed that Mrs. Bonds should be made a party to the cause, and required to litigate or release her claim. 3d. That about the 1st of January, 1866, the plaintiff demanded payment of the note in specie, refusing to receive legal-tender United States treasury notes, and in case the defendants refused to pay in specie, the plaintiff threatened to bring suit on the note, and the wife of the plaintiff threatened to set up her claim to the lands; wherefore it was agreed by the parties, that if the defendants would pay the face of the note in gold and silver, the plaintiff would accept legal-tender notes for the interest; that, in accordance with their agreement, they did pay the face of the note in gold and silver, and did procure the legal-tender notes, and did, on the      day of          , 1866, before the institution of this suit, tender to the plaintiff the whole balance due on the note in said legal tenders, which the plaintiff refused to receive, and immediately instituted this suit: the consideration of such payment by the defendants being to avoid a law-suit, its vexations and expenses, and also the dread of the claim of plaintiff's wife; that the plaintiff having violated his contract, the defendants had the right to the full value of their gold and silver already paid on the note, and that $1 in specie, at the time of payment, was worth $1 50 in legal tenders, and that in this aspect of the

case the note was fully paid off and discharged. 4th. That the value of the gold and silver paid on the note by defendants in legal tenders was more than sufficient to pay the whole debt, and that the plaintiff has already received the full payment of the note.

The plaintiff filed exceptions to answer of defendants on the 9th of May, 1866, which were sustained to all that portion of the said answer which set up the claim of Melissa Bonds to the lands described in the petition, to which ruling the defendants excepted, and this ruling is assigned for error.

The plaintiff again filed exceptions to the answer of the defendants on the 9th of November, 1866, which were sustained to all that portion of the answer which alleged a tender of the balance due on the note sued on, to which the defendants excepted, and which ruling is assigned for error.

The plaintiff also objected to the witness, Harbert, proving the value of the gold and silver in legal-tender notes at the date of the payments on the note, and his objections were sustained by the court, and this ruling is assigned for error.

The only evidence before the jury was, the note sued on and the indorsements thereon, and the testimony of the witness, Harbert, as to the payments upon the note being made in gold and silver, and the two notes plead in off-set by the defendants.

The court assumed in its charge that there was a balance remaining due on the note yet unpaid, and instructed the jury in the mode of calculating and arriving at that balance; that is, first to apply the payment to the interest accrued, and the balance to the extinguishment of principal.

The only evidence is the note, the indorsements thereon, and the testimony of Harbert, that the payments on the note were made in gold and silver.

The last indorsement on the note is as follows:

"January 9, 1866. Received $670 83, which is in full of the principal, in gold and silver.          N. BONDS."

The verdict and judgment being for the plaintiff, the defendants prosecuted error. The questions are upon the foregoing rulings.

*Robert L. Foard,* for the plaintiff in error.—We inquire, what was the meaning of this indorsement? What is the legal effect of these words? Is it not the law, that the release of the principal of a debt will also release the interest thereon? (Story on Cont., p. 820, § 994.) Or, at least, is not this the presumption of law? And if a release will be construed according to the intent of the parties, must we not gather that intent from the circumstances of the transaction and the terms of the release?

If there was an ambiguity in the language of the receipt on the back of the note, it was open to explanation, and it was the business of the plaintiff, knowing that the defendants alleged full payment of the whole note, to give some explanation thereof. The witness, Harbert, who made the payments, was upon the stand; the plaintiff did not interrogate him upon this matter, but was particular to object to the questions propounded to the defendants. We believe that, from the note and indorsements thereon, it is fully paid, and thus the court should have charged the jury.

If wrong in this position, we yet contend that the defendants have fully paid the note, and that the plaintiff has received its full value. We assume that the principal and interest of the note were payable in legal-tender United States treasury notes. And, if this be true, then that the value of the gold and silver paid on the note was of equal, if not superior, value to principal and interest on the note. In this view of the case, the court erred in preventing the witness, Harbert, from proving the value of the gold and silver at the time of payment. If the amount legally due on the note has been fully paid, is there any justice in allowing the plaintiff to recover at least one-third more? Is

not specie a commodity, and is not the legal standard of value in the United States a greenback dollar?

We contend that the court erred in sustaining the exceptions of plaintiff to answer of defendants filed the 9th of May, 1866.

In this cause, if the wife of the plaintiff had no claim to the land, or if she did not intend to assert a claim, how easy for her to have executed a release. (See the case of Cooper v. Singleton, 19 Tex., 260.)

We think the court erred in sustaining the exceptions of plaintiff to the answer, which were filed the 9th of November, 1866. The court below ruled out all that portion of the answer of defendants which alleged a tender of the balance due on the note sued on. The Supreme Court will perceive, upon an inspection of the answer, that this plea of the defendants was not intended or offered as a technical plea of tender. The defendants set up that there was an agreement between them and the plaintiff, about the 1st day of January, 1866, by which agreement the defendants undertook to pay the principal or face value of the note in specie and the interest thereon in legal-tender United States treasury notes, which the plaintiff agreed to accept.

We think, under the ruling in Bradshaw v. Davis, 12 Tex., 336, the plea is good, as an accord and satisfaction. If instead of paying the face of the notes in gold and silver, suppose that it was agreed in a case similar to this that if the defendants would pay stock cattle, at a price one-third less than their market value, they would be permitted to discharge the interest in legal-tender notes, would it be justly contended that the plaintiff could hold the cattle at this price, and yet act as he has done in this case?

If the charge of the court to the jury be correct, instructing them in the mode of computing interest, then the verdict of the jury is excessive, for he distinctly charged them

that interest could not be recovered on interest. There can be no doubt but the whole face of the note was paid on the 9th day of January, 1866, and, consequently, the only amount remaining due was the interest on the note up to that date, and therefore interest could not be recovered on that interest. The jury did calculate interest on that interest, and their verdict is excessive.

*F. Barnard*, for defendant in error.—There was no error in sustaining plaintiff's exceptions, filed May 9, 1866, to defendant's answer, setting up failure of consideration, upon the grounds that another claimed the land. (Talmadge v. Wallace, 25 Wend., 25; Cooper v. Singleton, 19 Tex., 260; Brock v. Southwick, 10 Tex., 65.)

The court did not err in sustaining the exceptions of the plaintiff to defendant's answer, setting up tender in United States legal-tender notes. It is believed that the act of Congress, making the treasury notes of the United States a legal tender in the payment of debts, is in conflict with article I, section 10, of the Constitution of the United States and article X of the Amendments to the Constitution of the United States, and is, therefore, void; also, for the further reason, that the money was not brought into court and tendered to the plaintiff in open court. (Brock v. Jones, 16 Tex., 46.)

Moore, C. J.—The exception to the answer, alleging that a claim of title to the land, in consideration of which the note on which this suit is brought was given, as set up by appellee's wife, was properly sustained. The insufficiency of this answer is much too plain and obvious for serious argument. Essential averments, as it has been held by often repeated decisions of this court, are wanting to sustain the answer, even if the appellants, instead of holding by deed, were in possession of the land for which the note was given under an executory contract for title.

(Herron v. DeBard, 24 Tex., 181; Luckie v. McGlassen, 22 Tex., 282; Hart v. McReynolds, 20 Tex., 595; Cooper v. Singleton, 19 Tex., 260; Moreland v. Atchison, 19 Tex., 303; Taylor v. Johnson, 19 Tex., 353; Lawrence v. Simonton, 13 Tex., 220: Brock v. Southwick, 10 Tex., 65; Johnson v. Long, May, 1860,) [27 Tex., 21.]

Nor did the court err in sustaining the exception to that part of the answer alleging a tender to appellants before the commencement of the suit, in United States "legal-tender" treasury notes, of the amount due him.  The answer is not accompanied by a *profert in curia* of the amount tendered, and it is not, therefore, pretended by appellants that it can be sustained as a technical plea of tender, although made for the proper amount in coin, instead of currency. (Brock v. Jones, 16 Tex., 461.)   It is claimed, however, that the allegation of a tender of the remainder due on the note in currency, and appellee's refusal to accept the same, in connection with the fact of the previous payment of the principal of the note in gold, in pursuance of the agreement of appellee to receive "legal-tender notes" in discharge of the interest, if appellants would pay the principal in gold, authorized their claiming the difference between the value of gold at the time of its payment and "legal-tender notes," in which, as they say, except for this agreement, they could legally have paid the full amount of principal and interest of the debt.   It is very obvious, however, if the act of Congress making treasury notes a legal tender for debts is constitutional, and the law should be held valid and obligatory, such notes, for the purposes and to the extent to which they are declared a legal tender, must be regarded, in legal contemplation, of equal value with gold and silver coin of corresponding denomination.   Whether payment has been made by the debtor in the one or the other, no discrimination can be made by the court, whatever may be their difference in this respect in transactions for their voluntary exchange between individuals.  Unquestionably,

therefore, the mere fact of the payment of a part of a debt in coin does not entitle the debtor to claim the premium which coin may command in the market over currency.

It is insisted, however, that this rule is modified in the present case by the fact, that the payments were made in coin on an express agreement between the parties that interest might be discharged with legal tender notes. This position may be viewed in two aspects. But whether considered upon the hypothesis of the constitutionality or unconstitutionality of the law, declaring treasury notes a legal tender for debts, will in no way affect the result of this case. If the law is constitutional, appellants are fully and completely protected by it in the right claimed by them, under the agreement with appellee, to pay the balance due on the note in "legal-tender notes." They stand in precisely the same category as if there had been no agreement upon the subject, and the alleged tender had been made in coin instead of currency. The judgment rendered by the court is precisely the same which must have been given if by the stipulations of the note itself it were to be discharged in "legal-tender notes," or whether the alleged tender was in such notes or in coin. If the debt could have been discharged in currency, so still may the judgment. And the only injury which has or can result to the appellants, so long as the law continues in force, is, that they may, from their failure to make profert of their tender with their answer, have rendered themselves liable to the costs of suit and interest upon the amount adjudged against them. If this tender had been properly plead, it would have been necessary for us to determine whether the act making treasury notes a legal tender for debts is, in fact, constitutional; but, as this is not the case, we deem it unnecessary and improper at this time to intimate any opinion upon the point, especially as, although suggested in the briefs, it has not been argued by counsel.

But it may be said that the law is unconstitutional, and

therefore appellee cannot be compelled to receive currency in discharge of the judgment; yet, as he had agreed to accept it, and appellants had tendered it in due time, he should have had judgment only for the value of the currency to which, by the agreement, he was entitled. The answer, however, to this position is, that the agreement to receive currency in discharge of the interest on the note was not a part of the original undertaking, but was made long subsequent thereto, and when appellants were bound to pay, if the law in question is unconstitutional, the whole amount of the debt in coin. Unquestionably, then, the mere payment of part of the debt will not support a promise to receive treasury notes, less valuable than the corresponding amount of money, in payment of the balance.

These views lead us to the conclusion, that there was no error to the injury of appellants in the ruling of the court upon the pleading, or in including the evidence offered by appellants to prove the difference between the value of "legal-tender notes" and gold at the time the different payments on the note were made.

The instructions given the jury by the court in respect to the calculation of interest, and the application of the payments made upon the note, are believed to be erroneous, and to have lead to an excess in the verdict of the jury. The general rule on this subject is undoubtedly in conformity with the charge of the court, and if the present were not an exceptionable case, no objection could be made to it. This general rule, however, is simply the guide furnished by the law for the application of payments when none has been made by the parties themselves. It is a well-recognized principle, that the debtor is entitled to appropriate the amount paid to either one of several distinct debts or items of an account on which he stands charged.

When, however, the claim of the creditor is a single debt, consisting of principal and interest, the debtor certainly cannot, as a matter of right, make partial payments,

and appropriate them to the extinguishment of the principal, in advance of the discharge of the interest. If he were permitted to do so, he could, without the consent of the creditor, change the legal effect of the contract, by which the unpaid balance, not including interest, bears interest, until the entire debts are discharged. But there is no reason why this may not be done by the mutual assent of the parties. And although the creditor is not bound to accept such partial payment, yet if the debtor makes it upon the stipulation and agreement that it shall be applied in satisfaction of the principal, and not of the interest, and it is so accepted and appropriated by the creditor, the principal is thereby extinguished and discharged, and the creditor cannot be permitted, without the consent of the debtor, to shift the application of such payment from the principal to the interest; nor will the law do so for him. The credits indorsed by appellees on the note in suit in this case show, unless explained, that the payments made by appellants were applied to the discharge of the principal of the note, and after the last payment there was nothing but interest, which bears no interest, due upon it. It must consequently be held, that the instructions directing the application of the payments first in discharge of the interest is erroneous, and that the verdict for the amount thus ascertained and interest thereon until the trial is excessive.

The judgment is reversed, and the cause

REMANDED.